IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| FIFTH THIRD BANK, | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 3:09-cv-01202 |
| | ) | Judge Nixon |
| v. | ) | Magistrate Judge Knowles |
| | ) | |
| DIAL PROPERTIES, LLC, JOHN LARRY | ) | Jury Demand |
| DIAL, DAVID DIAL and JEFF DIAL, | ) | |
| | ) | |
| *Defendants.* | ) | |

# ORDER

Pending before the Court is Plaintiff Fifth Third Bank's ("Fifth Third" or "Plaintiff") Motion for Summary Judgment (Doc. No. 16) ("Motion"), supported by a Memorandum of Law (Doc. No. 17), to which Defendants Dial Properties, LLC ("Dial Properties"), John Larry Dial, David Dial, and Jeff Dial (collectively, "Defendants") filed a Response (Doc. No. 20) and Memorandum in Response and Opposition (Doc. No. 21) ("Response"). Plaintiff filed a Reply (Doc. No. 25), and Defendants then filed a Sur-Reply (Doc. No. 30) after receiving the Court's permission to do so (Doc. No. 29). For the reasons stated below, the Motion is **GRANTED**.

## I. BACKGROUND

*A. Factual Background*

In this case, Plaintiff seeks a deficiency judgment against Defendants in relation to a loan on which the borrower, Dial Properties, defaulted, and the loan's guarantors (John Larry Dial, David Dial, and Jeff Dial) then failed to make payments. Plaintiff seeks to recover well over $100,000.00, reflecting the remaining principal obligation ("Principal Deficiency"), as well as still-accruing interest, costs and expenses, and attorney fees. (Doc. No. 1, at 2-3, ¶¶ 20-21.)

Plaintiff is an Ohio banking corporation with its principal place of business in Cincinnati, Ohio; Dial Properties is a Tennessee limited liability company with its principal place of business in Brentwood, Tennessee; and the Guarantors are all citizens of Tennessee. (Doc. No. 11, at 1, ¶¶ 3-5.) All transactions giving rise to this case occurred in Williamson County, Tennessee. *Id.*, ¶ 6. Plaintiff alleges that that federal court jurisdiction is proper pursuant to 28 U.S.C. § 1332, in light of the diversity of citizenship between Plaintiff and Defendants and Plaintiff's claim of entitlement to over $75,000.00. (Doc. No. 1, at 2, ¶ 7.) Plaintiff claims that venue is proper in this Court specifically because all the Defendants reside within the Middle District of Tennessee (28 U.S.C § 1391(a)(1)), and because a substantial part of the events or omissions giving rise to this lawsuit occurred in this district (28 U.S.C. § 1391(a)(2)). *Id.*, ¶ 8. Defendants have made no objection to the propriety of the instant venue, but have claimed that if any deficiency does exist it is less than $75,000.00, such that dismissal for lack of jurisdiction would be appropriate.[1] (Doc. No. 21, at 6.)

On May 12, 2006, Dial Properties executed a Construction Promissory Note ("Note") by which the company received $600,000.00 from lender Fifth Third, promising to pay the same amount plus interest and cost with a maturity date of May 12, 2007 (Doc. No. 1, Att. 1, at 1). The Note was subsequently modified on August 12, 2007, June 12, 2008, and December 20, 2008. *Id*. at 4-9. The Note provided that if Dial Properties' indebtedness to Fifth Third was not paid when due, any attorney fees or collection costs to recover the funds would fall to Dial Properties. *Id.* at 3. It was secured by a Deed of Trust to a property in Brentwood, Tennessee. (Doc. No. 18, Att. 6.) John Larry Dial, David Dial, and Jeff Dial ("the Guarantors") each executed Guaranties promising to fully and promptly make good on the obligations of Dial Properties to Fifth Third

---

[1] Despite this remark in their Response, Defendants have not moved to dismiss this action on any basis.

when due.  (Doc. No. 22 at 2.)  The Guaranties further states that the Guarantors would be accountable for all expenses and attorney's fees incurred in collecting the obligations, including those of any other Guarantors.  *Id.*

Dial Properties made no payments under the Note on its date of maturity, March 20, 2009, even though Plaintiff made demand.  *Id.* at 3.  The Guarantors also failed to pay Fifth Third.  *Id*.  The property securing the loan was foreclosed on August 3, 2009, and Fifth Third made a credit bid of $500,000.00 at a subsequent foreclosure sale, in which it was the highest bidder.  (Doc. No. 18, Att. 2, ¶ 8.)  Plaintiffs submitted an affidavit from Thomas J. Carroll, a Vice President of Fifth Third, indicating that as of August 3, 2009, the Principal Deficiency Calculation (reflecting Defendants' total indebtedness, including the $600,000.00 principal interest, costs, attorney fees, appraisal fees, and back taxes on the Brentwood property, less the $500,000.00 bid for the property) came to $152,119.94.  (Doc. No. 18, Att. 2, ¶¶ 7-12.)  By Mr. Carroll's calculation, interest continued to accrue on the Principal Deficiency at a rate of $101.41 per day after August 3, 2009, such that the total amount of indebtedness was $177,573.85 exclusive of collection costs as of April 12, 2010.  *Id.*  Plaintiff alleges that Defendants are jointly and severally liable to Fifth Third, which Defendants admit (Doc. No. 22 at 3), and thus seek judgment in their favor against each of the Defendants[2] in an amount reflecting the Principle Deficiency, interest, "reasonable" collection costs in the amount of 15% of the total amount owed, and court costs .

---

[2] As mentioned below, Defendant David Dial filed a Suggestion of Bankruptcy (Doc. No. 19) indicating that he had filed a Voluntary Petition for Chapter 7 Bankruptcy, effecting an automatic stay.  This filing has the effect of staying the proceedings as to David Dial, and Plaintiff has indicated to the Court by phone that it only proceeds against the non-bankrupt parties at present.  On January 31, 2011, Plaintiff filed a Motion to Dismiss David Dial without prejudice from this case on the basis that he had been discharged of his debts as a result of the bankruptcy proceeding.  (Doc. No. 32.)  David Dial has 14 days to make any response, L.R. 7.01(b), a period that has not run as of the date of this Order.

The primary issue in dispute is the amount Defendants owe to Plaintiff, which Defendants claim has been established conclusively, and which Plaintiffs argue must hinge on the adequacy of Fifth Third's $500,000.00 bid on the Brentwood property. Defendants submitted along with their Response to Plaintiff's Statement of Undisputed Facts a copy of an appraisal valuing the property at $625,000.00, which was ordered by Fifth Third and was dated May 26, 2009. (Doc. No. 22, Att. 1.) In their supplemental filing on July 28, 2010, Defendants also provided the Court with a copy of a document labeled as a 2009 Form 1099-A, on which Fifth Third is listed as the lender, indicating that the fair market value of the Brentwood property was $625,000.00. (Doc. No. 28, Att. 1.) Defendants indicate that this document was provided to them after foreclosure and the commencement of this action. (Doc. No. 28 at 1.)

  B. *Procedural Background*

Plaintiff filed a Complaint (Doc. No. 1) in this Court on December 22, 2009, and filed the Motion under consideration (Doc. No. 16) on May 26, 2010, a Memorandum of Law (Doc. No. 17) and a Statement of Material Facts (Doc. No. 18). The next day, Defendant David Dial filed a Suggestion of Bankruptcy (Doc. No. 19), rendering these proceedings stayed as to him specifically. Defendants then filed a Response (Doc. No. 20) and Memorandum in Response and Opposition (Doc. No. 21) on June 14, 2010, as well as a Response in Opposition to Plaintiff's Statement of Material Facts (Doc. No. 22) and Defendants' own Statement of Undisputed Material Facts (Doc. No. 24). Plaintiff filed a Reply (Doc. No. 25) on June 24, 2010, as well as a Response to Defendants' Statement of Undisputed Material Facts (Doc. No. 26).

On June 25, 2010, Defendants filed a Motion for Leave to File a Response to Plaintiff's Reply Brief (Doc. No. 27), followed by a Supplemental Filing on July 28, 2010. On January 4,

2011, the latter Motion was granted (Doc. No. 29), and Defendants then filed a Sur-Reply on (Doc. No. 30) on January 13, 2011.

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides in part that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The general thrust of the inquiry a court must perform in considering a motion for summary judgment is whether there is a need for trial, in that genuinely disputed factual matters must be put to the fact-finder because they might reasonably be resolved in either party's favor. *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 250 (1986). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247-48. The substantive law involved in the case will underscore which facts are material, and only disputes over outcome-determinative facts will bar a grant of summary judgment. *Id.* at 248.

Parties must support their allegations as to the existence or absence of a genuine dispute as to any material fact: Rule 56(c)(1)(A) allows parties to support their claims by citing to materials in the record; Rule 56(c)(1)(B) allows them to support their claims by showing that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact." While the moving party bears the initial burden of proof for its motion, the party that opposes the motion has the burden to come forth with sufficient proof to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In ruling on a motion for summary judgment, the court must review the facts and reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Further, the Court will closely scrutinize the movant's papers while indulgently treating those of the opponent. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted).

## III. ANALYSIS

Plaintiff argues that under Tennessee law (which the parties agree is controlling in this case), a court should enforce an unambiguous agreement according to its terms as a matter of law (Doc. No. 17 at 4 (citing *Richland Country Club, Inc. v. CRC Equities, Inc.*, 832 S.W. 2d 554, 557 (Tenn. Ct. App. 1991)), and should also hold a guarantor in a commercial transaction liable "to the full extent of his engagements" (Doc. No. 17 at 4 (citing *Mathis v. U.S.I. Props., Inc.*, 894 S.W. 2d 278, 280 (Tenn. Ct. App. 1994)). Plaintiff claims that there is no allegation of ambiguity as to either the Note or the Guaranties, so the Court must enforce them as a matter of law in light of the aforementioned precedents. Plaintiff claims entitlement to judgment against Defendants jointly and severally, amounting to "the outstanding balance of the Note as of the date of entry of judgment, plus an award of attorney fees and expenses incurred and to be incurred to collect the outstanding Indebtedness in an amount equal to fifteen percent (15%) of the total amount owing, plus court costs." (Doc. No. 17 at 4.) Defendants' Response asserts that "there is no real dispute as to the material facts," but that there is no deficiency—they claim that Plaintiff's bid at the foreclosure sale was "grossly inadequate" and "substantially less than the known value of the property," such that a deficiency judgment would impermissibly provide Fifth Third a windfall. (Doc. No. 21 at 2.) They do not dispute that the loan documents

contained fees regarding reasonable attorney fees and cost of collection, but do dispute the reasonableness of the 15% Plaintiff seeks to recover in light of the simplicity of the case and of collection. (Doc. No. 21 at 6.)

*A. Applicable Law*

Resolution of this case thus hinges on Tennessee's foreclosure sale rules as they pertain to obtaining a deficiency judgment. Both parties have pointed to the principles set out in *Duke v. Daniels*, 660 S.W. 2d 793, 795 (Tenn. Ct. App. 1983), which were paraphrased clearly and asserted as the leading precedent on this issue in *Lost Mountain Development Co. v. King*:

> [T]he relevant rules on deficiency judgments after a foreclosure sale of real property [are]: (1) the value of the property sold is not looked to in a deficiency case unless there is a charge of fraud in the manner of sale or a charge that the sales price was grossly inadequate; (2) in the absence of an allegation of irregularity in the sale, there is a presumption that the price brought at the public sale is the fair market price of the property; and (3) where gross inadequacy is claimed, the burden of overcoming the presumption attached to a sale free of irregularity is on the defendant against whom a deficiency judgment is sought.

No. M2004-02663-COA-R3-CV, 2006 WL 3740791, at *5 (Tenn. Ct. App. Dec. 19, 2006). In *Lost Mountain*, the Tennessee Court of Appeals rejected a more stringent standard that had arisen in *Holt v. Citizens Central Bank*, 688 S.W. 2d 414 (Tenn. 1984), returning to the previous rules of *Duke*. The parties appear to agree that the rules of *Duke* as stated in *Lost Mountain* are those that should be applied in this case, and the Court is satisfied from its own review of the case law and the approaches taken by other federal district courts in similar cases that this is the prevailing standard in Tennessee law today. Essentially, this standard establishes that without a claim of irregularity of some sort, the value of property at a foreclosure sale will not be looked into and will be presumed to reflect the property's fair market value; a defendant, however, may take up the burden of overcoming this presumption by claiming gross inadequacy. If the defendant is successful in making such a showing, he or she can escape or lessen the alleged

deficiency amount. The issue before the court becomes "the value of the real estate at the time of the foreclosure." *Lost Mountain*, 2006 WL 3740791 at *5 (citing Duke, 660 S.W. 2d at 794).

      *B. Gross Inadequacy of Fifth Third's Bid*

Defendants raise the third rule of *Duke*, arguing that the there is a genuine dispute as to whether Fifth Third's bid was grossly inadequate and proffering some evidence to rebut the presumption that a sale free of irregularity brings the fair market price of the property. They also cite *Lost Mountain* for the proposition that "the debtor is entitled to present evidence about the fair market value of the property at the time of the sale so as to attempt to overcome the presumption and prove that the sale price was grossly inadequate." *Id.* They submit to the Court an appraisal ordered by Fifth Third valuing the property at $625,000.00 as of May 26, 2009 (Doc. No. 22, Att. 1), as well as an undated Form 1099-A sent to Defendants by Fifth Third indicating that the fair market value of the property at the time of sale was $625,000.00 (Doc. No. 28, Att. 1). Defendants have also obtained from Plaintiff an admission that the appraisal was performed independently and without bias, that it was in Plaintiff's possession as early as July 2, 2009, and that Plaintiff's bid was indeed $125,000.00 less than the appraisal value. (Doc. No. 26 at 1-2.) As such, Defendants claim that judgment for Plaintiff in the amount sought would be both unjust and unjustified under Rule 56, as there is a genuine dispute as to the amount of Defendants' indebtedness. (Doc. No. 21 at 5-6.) They also question the appropriateness of the 15% collection cost amount Plaintiff seeks. *Id.* at 7.

Plaintiff responds that its credit bid of $500,000.00, equal to 80% of the market value set out in the appraisal, is not grossly inadequate as a matter of law—instead, Plaintiff argues, it is reasonable in light of the fact that the appraisal reflects market value, but not liquidation value. (Doc. No. 25 at 3.) Plaintiff also points out that there was one other bidder at the sale who made

an opening bid of $50,000.00, *id.*, and that Fifth Third has since sold the property at a price of $420,000.00. The market value per the appraisal should not apply, Fifth Third argues, because it is the price a willing buyer would pay a willing seller for the property in its present condition, but Fifth Third was not a willing buyer and Dial Properties was not a willing seller. *Id.* Plaintiff cites a recent federal court case applying Tennessee law, *Cadence Bank, N.A. v. Latting Road Partners, LLC*, 699 F.Supp.2d 1033 (W.D. Tenn. 2010), to support its argument that an appraisal suggesting a higher value than what a bank pays for property is not prima facie evidence of gross inadequacy.

In *Cadence*, the district court considered an argument similar to Defendants' regarding a lender's allegedly inadequate bid of $750,000.00 at a foreclosure sale, when various appraisals had estimated the contested property's fair market value from $700,000.00 (or $500,000.00 liquidation value) to $1,470,000.00, *id.* at 1036-37. Additionally, the Court in *Cadence* considered the fact that the lending bank intended to accept an offer to purchase the property for $585,000.00. *Id.* at 1037. In addressing the defendants' argument that the sale price was grossly inadequate, the court explained that "by itself . . . the simple fact that Cadence Bank received a range of appraisal values" was not relevant—the Court's task is not to determine the property's value, but instead to "determine whether the record contains evidence to support Defendants' allegations of gross inadequacy." *Id.* at 1039-40 (citations omitted). Ultimately, the court found that:

> [T]he range of appraisal values . . . does not support Defendants' position that the foreclosure sale generated a grossly inadequate sale price and was therefore unfair. To the contrary, some appraisal values submitted to Cadence Bank were lower, and therefore the price obtained at the foreclosure sale fell squarely within the range of values for the property. Indeed, Cadence Bank purchased the property for sixty-five percent of the highest value placed on it by the appraisals contemporaneous to the foreclosure (*viz.,* $1,100,000.00). The fact that some appraisals suggested a higher value for the property than what Cadence Bank paid is also not controlling, as Tennessee law recognizes that

-9-

>"property often brings only one-half its true value at a forced sale under the best of circumstances."

*Id.* at 1040 (quoting *Holt*, 688 S.W.2d at 416). As such, the court found that the plaintiff was entitled to judgment.

While Plaintiff argues that *Cadence* supports their argument that its $500,000.00 bid was reasonable and not grossly inadequate, Defendants argue that *Cadence* is distinguishable from the instant case. Defendants emphasize that they have put forth evidence of the property's fair market value rebutting the adequacy of Fifth Third's bid, and also emphasize that Plaintiff has put forth no evidence of the property's value. (Doc. No. 21 at 3.) Although the Court is satisfied that Plaintiff has established some basis for its bid (80% of the appraisal it ordered), it should also be noted that in *Cadence*, the court cited *Duke* for the proposition that there is no burden on a plaintiff to prove the value of the property unless the sale is improperly held. *Cadence*, 699 F.Supp.2d at 1039 (citing *Duke*, 660 S.W.2d at 795). Defendants have not made such a suggestion, so the burden remains with them as to the property's value.

The Court agrees with Defendants that there is some distinction between the instant matter and *Cadence*. There has been no range of values established through different appraisals in this case, creating a range within which Plaintiff's bid falls. Defendants have put forth two documents (the appraisal and the Form 1099-A) that appear to indicate that the fair market value of the property was $625,000.00 instead of simply relying on the existence of Plaintiff's bid at the low end of a wide range of values. The Court notes, however, that only the value of a property *at the time of the foreclosure sale* is relevant to whether a lender's bid is grossly inadequate. *See, e.g.*, *Lost Mountain*, 2006 WL 3740791, at *6. The only appraisal referred to by the parties was completed on May 23, 2009—over two months prior to the foreclosure sale on August 3, 2009. The parties seem to agree that the $625,000.00 appraisal value applied at the

time of the sale (Plaintiff asserts that its bid was 80% of this amount), and the Form 1099-A Defendants have provided to the Court also lists a fair market value of $625,000.00, seemingly linked to the date on which the lender acquired the property (August 3, 2009). Still, it is not clear whether the property value listed on the Form 1099-A reflects anything other than the appraiser's May assessment, and thus whether Defendant has truly offered any evidence of the property's value at the time of the sale as is required to rebut the presumption of adequacy.

The Court must also note the point made in *Cadence* that a possible higher value for a foreclosed property provided in some appraisals is not controlling, because Tennessee law recognizes that the price brought at a forced sale is only one-half the property's true value. *Cadence*, 699 F.Supp.2d at 1040. In *Cadence*, the court used this proposition to support its finding that the lender was entitled to summary judgment when the property's purchase price was 65% of the highest appraisal value. *Id.* Here, Fifth Third's bid was 80% of the only appraisal value that has been presented to the Court—larger not only than the 50% recognized as legitimate in Tennessee law, but than the 65% value deemed not to reach the gross inadequacy standard in *Cadence*. Further, as in *Cadence*, the lender in this case has ultimately sold the property at a price lower than its bid in the foreclosure sale, such that it appears no windfall will be realized in seeking a deficiency judgment. Thus, although Defendants are able to assert that they have put forth some evidence, and that there is no appraisal supporting the $500,000.00 that Plaintiff bid for the Brentwood property, this evidence does not convince the Court that Plaintiff's bid was necessarily grossly inadequate. Indeed, the law indicates that the fact alone that a lender's bid is less than an appraisal value, even less by up to 50%, may not render the bid grossly inadequate—"less than" is not equated with "grossly inadequate" in Tennessee law.

Plaintiff also distinguishes the instant matter from the *Lost Mountain* case described above, in which the Tennessee appellate court reversed a lower court's grant of summary judgment because the *Duke* gross inadequacy standard had not been applied. There, the lender had made the only bid of $1,100,000.00 for the foreclosed property (just over a quarter of a $4,000,000.00 appraised value), then sought a deficiency judgment of approximately $4,000,000.00 while selling the property to a third party for $2,975,000.00. (Doc. No. 25 at 4 (citing *Lost Mountain*, 2006 WL 3740791, at *2-3).) Unlike in *Lost Mountain*, Plaintiff argues that Defendants here have put forth no proof as to the bid's gross inadequacy so as to overcome the presumption that the bid reflected the property's fair market value. Defendants, however, emphasize the court's statement in *Lost Mountain* that a debtor is entitled to put on evidence about the property's fair value at the time of sale in order to prove gross inadequacy, as well as more general points about fairness that were made in the opinion, but do not address the facts of the case with specificity. (Doc. No. 21 at 3-4.)

The Court cannot conclude based on the facts alleged by Defendants that there is a genuine dispute as to the amount of indebtedness as there was in *Lost Mountain*. There, the court was faced with a bid level shockingly low on its face—about 25% of the appraisal value, which is well below the one-half figure mentioned in *Cadence*—as well as a high subsequent sale price which was strongly suggestive of an unfair windfall. The bid in the instant case does not appear grossly low on its face, is well above the 50% and 65% levels mentioned above, and it is not accompanied by a subsequent sale indicating that the property was grossly undervalued in order to turn a profit on the foreclosure. Further, Defendants do not contest Plaintiff's claim that another individual bid $50,000.00 for the property at the foreclosure sale, which also cuts against Defendants' argument that the $500,000.00 bid was grossly inadequate at the time of the sale.

Ultimately, while Defendants have put forth some evidence (as they are entitled to do), they have not put forth sufficient evidence of *gross* inadequacy—they have simply shown that one appraisal, completed over two months prior to the foreclosure sale, valued the property at a somewhat higher level than Plaintiff's bid amount. As explained in *Cadence*, the Court's job is not to find the property's actual value, but to determine if there is evidence in the record to find that the lender's bid was grossly inadequate. 699 F.Supp.2d at 1040. On the facts presented, the Court cannot say there is any genuine dispute as to whether the bid was grossly inadequate.

*C. Damages*

As of April 12, 2010, the Principal Deficiency amount was $177,573.85, to which an additional $101.41 per diem in interest over a period of 304 days (through the date of judgment, February, 2011) must be added, for a total of $208,402.49. The Court will subtract the attorney fees and costs figures ($2,848.15 and $1,056.79) included in the Principal Deficiency calculation, bringing the judgment amount to $204,479.55. Plaintiff may file a motion for costs and attorney fees to which it is entitled under the Note subsequent to the entry of judgment. *See* Fed. R. Civ. P. 54; L.R. 54.01.

**IV.    CONCLUSION**

For these reasons, Plaintiff's Motion is **GRANTED**. The Court awards judgment in Plaintiff's favor in the amount of $204,479.55, for which Defendants are jointly and severally liable, as well as attorney fees and costs.

It is so ORDERED.

Entered this the _____10th_____ day of February, 2011.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT